795 So.2d 674 (2001)
Ex parte MICHELIN NORTH AMERICA, INC., Wilton Crawford, and Jorge Roa.
(Re Douglas Ray Cannon v. Michelin North America, Inc., et al.)
1990615.
Supreme Court of Alabama.
January 12, 2001.
*675 Jeffrey A. Lee and Stuart D. Roberts of Maynard, Cooper & Gale, P.C., Birmingham, for petitioners.
*676 Dennis G. Pantazis and Craig L. Lowell of Gordon, Silberman, Wiggins & Childs, P.C., Birmingham, for respondent.

On Application for Rehearing
MADDOX, Justice.
The opinion of October 27, 2000, is withdrawn, and the following is substituted therefor.
The issue presented in this case is whether an employee who was dismissed because of his failure to comply with a company policy regarding returning to work after being out on sick leave can, under the particular facts of his case, maintain an action alleging breach of contract, fraud, and fraudulent suppression. Douglas Ray Cannon was dismissed by his employer, Michelin North America, Inc. He sued the employer and two other employees. The trial court, apparently concluding that Cannon had been an "at-will" employee, entered a summary judgment in favor of the defendants. Cannon appealed from the summary judgment, but only as it related to the breach-of-contract and fraudulent-suppression claims. This Court transferred the appeal to the Court of Civil Appeals.[1] That court reversed the circuit court's judgment as it related to the two claims. Cannon v. Michelin North America, Inc., 795 So.2d 668 (Ala.Civ.App.1999). We granted the defendants' petition for certiorari review. We reverse and remand.

I. Background
The facts are not seriously disputed. Cannon was injured in an ice-skating accident in February 1996, while on vacation with his family in Tennessee; he was hospitalized and was unable to return to work for over a month. When he did return, he was able to work only intermittently, working only 33 days between February and November 1996. In November, Jorge Roa, personnel manager at the Michelin plant where Cannon worked, told Cannon's supervisor, Wilton Crawford, that, under the company's policies, for Cannon to keep his job he would have to work 90 consecutive days within a 12-month period from the day he was injured. Crawford told Cannon "that in order for him to clean his record, ... he would have to work 90 consecutive days prior to the end of the 12 months when he first went on leave." (C.R. at 319.)[2] Cannon did work for the required 90 days; however, he did not perform his full duties during that period. Michelin's medical-leave policy required that Cannon perform his full duties during the 90-day period. Because he did not do so, the company fired him. Cannon testified that he was never told of the requirement that he perform his full duties during the 90-day period. Indeed, Crawford testified that he had not been aware of the requirement that Cannon perform his full duties.
Cannon sued Michelin, Crawford, and Roa, alleging fraud, fraudulent suppression, and breach of contract. The defendants *677 moved for a summary judgment on all counts. Cannon opposed that motion only as it related to his claims of fraudulent suppression and breach of contract. The trial court granted the motion as to all claims. The Court of Civil Appeals reversed the judgment as it related to the fraudulent-suppression and breach-of-contract counts.

II. Discussion
In reviewing the disposition of a motion for summary judgment, we use the same standard the trial court used in determining whether the evidence before it created a genuine issue of material fact and whether the movant was "entitled to a judgment as a matter of law." Bussey v. John Deere Co., 531 So.2d 860, 862 (Ala. 1988); Rule 56(c), Ala. R. Civ. P. When the movant makes a prima facie showing that there is no genuine issue of material fact, the burden shifts to the nonmovant to present substantial evidence creating such an issue. Bass v. SouthTrust Bank of Baldwin County, 538 So.2d 794, 797-98 (Ala.1989). Evidence is "substantial" if it is of "such weight and quality that fairminded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved." West v. Founders Life Assurance Co. of Florida, 547 So.2d 870, 871 (Ala.1989).
Our review is further subject to the caveat that this Court must review the record in a light most favorable to the nonmovant and must resolve all reasonable doubts against the movant. Hanners v. Balfour Guthrie, Inc., 564 So.2d 412, 413 (Ala.1990).
We first consider the summary judgment as it relates to Cannon's claim that Michelin had breached a contract of employment between them. In Alabama, an employment relationship is ordinarily "at will," and the fundamental principle of employment at will is that the employment relationship is terminable by either party at any time and for any reason. Hoffman-La Roche, Inc. v. Campbell, 512 So.2d 725, 728 (Ala.1987); Hinrichs v. Tranquilaire Hosp., 352 So.2d 1130, 1131 (Ala.1977). Thus, Alabama is what is commonly known as an "employment-at-will" state. In Hoffman-La Roche,[3] this Court reaffirmed a well-settled rule:
"[T]hree elements must be shown to establish that an employment contract is one other than one terminable at will: (1) that there was a clear and unequivocal offer of lifetime employment or employment of [a] definite duration, Bates v. Jim Walter Resources, Inc., 418 So.2d 903 (Ala.1982); (2) that the hiring agent had authority to bind the principal to a *678 permanent employment contract, Alabama Mills, Inc. v. Smith, 237 Ala. 296, 186 So. 699 (1939); and (3) that the employee provided substantial consideration for the contract separate from the services to be rendered, United Security Life Ins. Co. v. Gregory, 281 Ala. 264, 201 So.2d 853 (1967)."
512 So.2d at 728; see also Birmingham-Jefferson County Transit Auth. v. Arvan, 669 So.2d 825 (Ala.1995) (citing Hoffman-La Roche).
Cannon argues the three conditions stated in Hoffman-La Roche were met when Crawford told Cannon "that in order for him to clean his record, ... he would have to work 90 consecutive days prior to the end of the 12 months when he first went on leave." (C.R. at 319.) The Court of Civil Appeals concluded that Crawford's statement and Cannon's actions met the requirements of Alabama law for establishing that the employment relationship was not at will. Two Judges of that Court dissented, concluding: "The evidence simply fails to support a clear and unequivocal offer of employment." 795 So.2d at 674. We agree with the views expressed by the dissenting Judges.
Alabama law provides that for an employment contract to be other than one at will, the employer must have made "a clear and unequivocal offer of lifetime employment or employment of [a] definite duration." Hoffman-La Roche, 512 So.2d at 728. Even assuming that Crawford's statement was an offer of employment, we cannot, based on the record before us, conclude that the defendants made a clear and unequivocal offer of lifetime employment or employment of a definite duration. This Court has held that "[a]n oral employment contract that neither includes, nor specifies, any particular term, length, or duration of employment is considered an employment at will contract." Bates v. Jim Walter Resources, Inc., 418 So.2d 903, 905 (Ala.1982). The contract Cannon alleges here does not clearly include or specify the "particular term, length, or duration of employment." Thus, even assuming that Crawford's statement was an offer of employment, it would nonetheless be insufficient to create anything other than a contract of at-will employment, as this Court held in Bates.
Because we conclude that Crawford's statement did not meet the first requirement for establishing an employment relationship other than one at will, we need not consider whether the second and third requirements of that test were met.
The summary judgment was proper as to the breach-of-contract claim.
We now address Cannon's fraudulent-suppression claim. Cannon alleged that Michelin had fraudulently suppressed the fact that unless he completed his full duties during the 90-day period he could be dismissed. A majority of the Court of Civil Appeals concluded that Cannon presented substantial evidence of fraudulent suppression, but two members of that court concluded, as the trial court apparently did, that Cannon had stated, in actuality, a claim of promissory fraud, not fraudulent suppression.
A claim of promissory fraud is "one based upon a promise to act or not to act in the future." Padgett v. Hughes, 535 So.2d 140, 142 (Ala.1988). Cannon alleges that Crawford stated that Michelin would continue to employ Cannon if Cannon fulfilled certain conditions. Thus, Cannon's claim is based on an alleged promise that Michelin would continue to employ Cannon in the future, and that claim is clearly one alleging promissory fraud.
"The elements of fraud are (1) a false representation (2) of a material existing fact (3) reasonably relied upon by the plaintiff (4) who suffered damage as a *679 proximate consequence of the misrepresentation. To prevail on a promissory fraud claim ..., two additional elements must be satisfied: (5) proof that at the time of the misrepresentation, the defendant had the intention not to perform the act promised, and (6) proof that the defendant had an intent to deceive."
Id. Cannon does not allege that Crawford intended to deceive him. In fact, Cannon stated in his deposition that he believed Crawford had been honest:
"Q. [By defense counsel] Now, in hindsight, do you have any reason to believe that [Crawford] wasn't being honest with you at the time that he told you, you need to try to get up and come to work each day, if you could?
"A. I think he has been honest. He was trying to help me at that time."
(C.R. at 361.) Therefore, because Cannon does not allege that Crawford intended to deceive him, or that any of the defendants, acting through Crawford, intended to deceive him, and because the record contains no substantial evidence indicating that Crawford or either of the other defendants intended to deceive Cannon, we conclude that the trial court properly entered the summary judgment for the defendants on Cannon's fraud claim.[4]

III. Conclusion
The trial court properly entered the summary judgment in favor of the defendants on the two claims as to which Cannon appealed. The Court of Civil Appeals erred in reversing as to those claims. Therefore, the judgment of the Court of Civil Appeals is reversed, and the cause is remanded.
OPINION OF OCTOBER 27, 2000, WITHDRAWN; OPINION SUBSTITUTED; APPLICATION OVERRULED; REVERSED AND REMANDED.
HOOPER, C.J., and HOUSTON, SEE, and BROWN, JJ., concur.
COOK, LYONS, JOHNSTONE, and ENGLAND, JJ., concur in part and dissent in part as to the opinion and dissent from the denial of rehearing.
LYONS, Justice (concurring in part and dissenting in part as to the opinion and dissenting from the denial of rehearing).
I concur as to that part of the majority opinion regarding the plaintiffs breach-of-contract claim, but I dissent as to that part regarding the fraudulent-suppression claim. While I do not believe the plaintiff by any means has the high side of an evidentiary dispute over the reasons for his not performing at full speed, I agree with Justice Johnstone that the plaintiff has adduced substantial evidence that makes this an issue inappropriate for a summary judgment. I dissent from the order overruling the application for rehearing.
JOHNSTONE, Justice (concurring in part and dissenting in part as to the opinion and dissenting from the denial of rehearing).
I concur in reversing the Court of Civil Appeals in its reversal of the summary *680 judgment against the plaintiff on his contract claim, but I dissent from reversing the Court of Civil Appeals in its reversal of the summary judgment against the plaintiff on his fraudulent suppression claim. I respectfully submit that the main opinion miscasts the plaintiff's fraudulent suppression claim as a promissory fraud claim. The plaintiff has alleged a classic case of fraudulent suppression and has supplied substantial evidence on all five essential elements.
A fact absent from the main opinion is necessary to a correct analysis of the plaintiff's fraudulent suppression claim. The medical leave policy of Michelin states, in pertinent part:
"If a regular, full-time employee returns to a full-time regular job for a period of 90 consecutive calendar days, the full eligibility of 26 weeks of Short-Term Disability (STD) benefits will be renewed. (Light duty assignments do not constitute full-time, regular duty.)"
In the case before us, the majority opinion of the Court of Civil Appeals correctly states:
"To prove fraudulent suppression, the plaintiff must show (1) the existence of an undisclosed material fact; (2) the defendant's duty to disclose the material fact; (3) the defendant's concealment or failure to disclose this material fact; (4) that the defendant's concealment or failure to disclose this material fact induced the plaintiff to act or to refrain from acting; and (5) that the plaintiff suffered actual damage as a proximate result. Locklear Dodge City, Inc. v. Kimbrell, 703 So.2d 303, 306 (Ala.1997)."
Cannon v. Michelin North America, 795 So.2d 668, 671 (Ala.Civ.App.1999). The first essential element, the undisclosed material fact, is the medical leave requirement that the plaintiff perform his full duties. The second essential element, the defendants' duty to disclose the material fact, was admitted by the defendants Roa and Crawford, both agents of Michelin. The third essential element, the defendants' concealment or failure to disclose this material fact, was likewise admitted by both Roa and Crawford. On the fourth essential element, that the defendants' concealment or failure to disclose induced the plaintiff to act or to refrain from acting, the plaintiff testified that, had he known the medical leave policy required performance of full duties, he would have performed his full duties notwithstanding the difficulties he would have encountered. Finally, the fifth essential element, proximately resulting damage, is that, for the plaintiff's failure to perform his full duties, he lost his "full eligibility of 26 weeks of short-term disability benefits," which otherwise would have been renewed. This damage completes the plaintiff's claim for fraudulent suppression regardless of the existence or nonexistence of damage from the plaintiffs loss of his terminable-at-will employment. Because the plaintiff submitted substantial evidence supporting each of the five essential elements of his fraudulent suppression claim, no fact findings against him on these elements by this Court are appropriate in this review of the summary judgment. Rather, this Court should affirm the judgment of the Court of Civil Appeals reversing the summary judgment entered by the trial court against the plaintiff on his fraudulent suppression claim.
COOK and ENGLAND, JJ., concur.
NOTES
[1] See § 12-2-7(6), Ala.Code 1975
[2] Cannon testified:

"Wilton [Crawford] had called me at home and told me that I only had so much vacation time I could take, and he said I need to come to work somehow. He said he would even come get me and take me back and forth to work, to make sure I got my 90 days in. That was a rule they had. He said Jorge Roa had contacted him and talked to him a couple of hours that day about they had a rule, and I came back to work November 7th. If I could get my 90 days in, my job would be secure. He said, `If there is just any way you can come in and get your 90 days in, your job will be there.' He said, `I'll help you.'"
(C.R. at 361.)
[3] Hoffman-La Roche is a landmark case because, in that case, this Court first recognized the possibility that an employee handbook may form a contract that converts an at-will employment relationship into one in which the employer's right to terminate the employment is limited. This Court summarized its holding as follows:

"In summary, ... the language contained in a handbook can be sufficient to constitute an offer to create a binding unilateral contract. The existence of such a contract is determined by applying the following analysis to the facts of each case: First, the language contained in the handbook must be examined to see if it is specific enough to constitute an offer. Second, the offer must have been communicated to the employee by issuance of the handbook, or otherwise. Third, the employee must have accepted the offer by [accepting or continuing] employment after he has become generally aware of the offer. His actual performance supplies the necessary consideration."
512 So.2d at 735.
This holding of Hoffman-La Roche is not at issue in this case, however, because Cannon did not in his complaint state a claim based upon an allegation that he had relied on a handbook. Rather, his complaint states a claim based on an allegation that he and Michelin had entered into a contract that was based on Crawford's statement to Cannon.
[4] It was not because Michelin's policy was suppressed from him that the plaintiff refrained from acting to perform his full duties. The reason the plaintiff did not perform his full duties was that his superiors were concerned about his health and safety and the health and safety of other employees. The plaintiff could have been working around inside the plant. Thus, it was not because of an allegedly suppressed fact that the plaintiff refrained from performing his full job duties the plaintiff was unable to perform his full job duties, because of his impaired state. Therefore, the plaintiff could not satisfy the fourth element or the fifth element of fraudulent suppression.